Aylwyn L. LACHNEY, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 544–82L.

United States Claims Court.

April 11, 1983.

Dee D. Drell, Alexandria, La., for plaintiff; Gold, Little, Simon, Weems & Bruser, Alexandria, La., of counsel.

Nancy S. Bryson, Washington, D.C., with whom was Asst. Atty. Gen. Carol E. Dinkins, Washington, D.C., for defendant; Robert D. Daniel, of counsel.

## ORDER

SPECTOR, Judge.

Defendant has moved under Rule 12(b)(4) to dismiss plaintiff's complaint on the grounds that it fails to state a claim upon which relief can be granted. It has further applied for a hearing on its motion prior to trial (Rule 12(d)) and a hearing was provided by conference call on April 6, 1983, as agreed to by the parties.[1]

### Statement of Alleged Facts

The following statement of facts is taken from plaintiff's complaint, as further explained at oral argument.[2] Plaintiff is the "holder by lease" of certain lands in Rapides Parish, Louisiana. In May and June of 1979, he sought to clear it for farming purposes. It had previously on several occasions been cut over for timber, and at that time had virtually no commercial value except as "excellent farm land." There are certain low lands (sloughs) on the property which petitioner had no intention of clearing.

On June 6, 1979 two agents of the Department of the Army, Corps of Engineers inspected the property and issued a preliminary determination that the sloughs were "wetland" and therefore "waters of the United States." Plaintiff agreed, and made plans to clear only the remaining portions of these tracts. However, on June 22, 1979, the U.S. Environmental Protection Agency issued a ruling that all of the land lying below the 78.0 mean sea level contour constituted "wetland" placing it under U.S. jurisdiction pursuant to the Clean Water Act.[3] That determination by EPA was later amended by its letter of August 23, 1979.

Implementing its "wetland" determination, the EPA ordered plaintiff to cease and desist from his clearing operations which were characterized by EPA as "dredge" or "fill" activities. In letter dated September 17, 1979, the Department of the Army, Corps of Engineers indicated that it was in direct conflict with EPA as to its characterization of the land as "wetland." This created a dilemma for plaintiff as to whether or not he needed a permit to clear it for farming. Plaintiff is prepared to show that the Corps of Engineers' characterization of the land as "non-wetland" was accurate and proper and supported by on-site and current data, in contrast to the EPA determination which was unsupported.

As a result of the EPA ruling and an opinion of the Attorney General dated September 4, 1979, plaintiff was required to seek a permit from the Corps of Engineers. It was then necessary to publicize the application. Additional drawings, and an environmental impact statement were required. Plaintiff was advised that processing of the environmental impact statement would take at least a year.

On April 20, 1980, EPA modified its prior ruling and determined that "some" of the lands could be cleared for farming. This was in contrast to its prior determination. Then the U.S. Department of the Interior, Fish and Wildlife Service recommended to the Corps of Engineers on May 1, 1980 that a permit be denied on the basis of the prior EPA determination that virtually all the land was "wetland." Plaintiff is prepared to show that the Fish and Wildlife determination was also made without any supporting on-site data. Meanwhile all relevant state agencies had stated that they interposed no objection to clearing the land for

---

1. Plaintiff's counsel resides in Alexandria, Louisiana.

2. For the limited purpose of evaluating a motion to dismiss for failure to state a claim upon which relief can be granted, the facts alleged by plaintiff are regarded as established.

3. 33 U.S.C. § 1344.

farming. On May 23, 1980 plaintiff was for the first time requested to officially comment on the EPA and Fish and Wildlife objections, and he has since cooperated to the maximum. On June 12, 1980, he developed and submitted a conservation plan even though his position continues to be that this is not "wetland."

On January 28, 1981, the Corps of Engineers advised that, because of the Fish and Wildlife opposition, the matter would have to be referred to higher headquarters. After repeated requests to plaintiff to agree or disagree with the issuance of a conditional permit, he agreed on April 27, 1981, reserving his rights as to delays already incurred. More than a year later, on May 14, 1982, a permit was actually issued. The delays resulted from an inter-agency dispute and were not plaintiff's fault.

Plaintiff argues that the land is not and never was "wetland," and the delay in rendering a decision on the permit was unreasonable, arbitrary, and capricious, amounting to a taking of plaintiff's property without just compensation. He further argues that the Clean Water Act expresses a congressional intent that permits, when required, be issued within ninety (90) days "to the maximum extent possible." Subtracting that 90 days, plaintiff asserts that he lost almost 3 years from the time he started to clear and farm the land to the time he received a permit. As a result he allegedly lost $67,500 in increased clearing costs, $150,000 in crop losses on the 750 acres in

question, and $48,000 in interest on borrowings while waiting to go into production.

### Discussion

Defendant's motion to dismiss is predicated on the argument that plaintiff was eventually granted a permit, and it offers as a contrast *Deltona Corporation v. United States.*[4] On the facts present in *Deltona* it was found that no "taking" occurred even though the permit sought therein was denied, because economically viable uses of Deltona's property remained. Defendant therefore argues that:

> *a fortiori* there is no compensable taking in this case where the permit was in fact issued and plaintiff is doing exactly what he planned to do—albeit later than when he wished to begin.

Plaintiff responds that there are factual issues to be tried, namely, whether or not this was in fact "wetland," the initial determination which triggered the prolonged inter-agency discussions which followed.[5] Also at issue is whether or not the congressional mandate for issuance of a permit within 90 days "to the maximum extent possible," was met in this case, even if one assumes that this acreage was "wetland" requiring a permit.[6]

Plaintiff further observes that a compensable "taking" need not be total and absolute, but may be partial or temporary.[7] Furthermore, the issue of whether or not

---

4. 228 Ct.Cl. ——, 657 F.2d 1184 (1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1712, 72 L.Ed.2d 135 (1982).

5. Citing *Avoyelles Sportsmen's League v. Alexander,* 511 F.Supp. 278 (W.D.La.1981).

6. Section 404 of the Clean Water Act (33 U.S.C. § 1344(q)) provides:

   "Not later than the one-hundred-eightieth day after December 27, 1977, the Secretary shall enter into agreements with the Administrator, the Secretaries of the Departments of Agriculture, Commerce, Interior, and Transportation, and the heads of other appropriate Federal agencies to minimize, to the maximum extent practicable, duplication, needless paperwork, and delays in the issuance of permits under this section. Such agreements shall be developed to assure that, *to the maximum ex-*

*tent practicable, a decision with respect to an application for a permit under sub-section (a) of this section will be made not later than the ninetieth day after the date the notice for such application* is published under sub-section (a) of this section." [Emphasis supplied.]

7. Citing *Tee-Hit-Ton Indians v. United States,* 348 U.S. 272, 75 S.Ct. 313, 99 L.Ed. 314 (1955), *reh'g denied,* 348 U.S. 965, 75 S.Ct. 521, 99 L.Ed. 753 (1955); *United States v. Kansas City Life Ins. Co.,* 339 U.S. 799, 70 S.Ct. 885, 94 L.Ed. 1277 (1950); *R.J. Widen Co. v. United States,* 357 F.2d 988, 993, 174 Ct.Cl. 1020 (1966); *Jacobs v. United States,* 290 U.S. 13, 54 S.Ct. 26, 78 L.Ed. 142 (1933). *See also, Armstrong v. United States,* 364 U.S. 40, 80 S.Ct. 1563, 4 L.Ed.2d 1554 (1960).

there has been a compensable "taking" is one of fact and not law, and it is dependent upon the particular facts of each case.[8]

As a general rule, a motion to dismiss is viewed with disfavor and should rarely be granted.[9] In *Conley v. Gibson*,[10] cited incidentally by defendant to support its motion to dismiss, the court said:

> In appraising the sufficiency of the complaint we follow, of course, the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears *beyond doubt* that the plaintiff can prove *no set of facts* in support of his claim which would entitle him to relief. [Emphasis supplied.] [11]

*Deltona*,[12] on which defendant places its principal reliance, is distinguishable on its facts. It was found in *Deltona* that denial of a permit did "not deprive Deltona of the economically viable use of its land." [13] Those are among the facts which cannot be determined in this case without trial. Plaintiff herein claims that he was totally deprived of the only economically viable use of the land (farming) during the entire period that a permit was deemed by defendant to be required, but which was nevertheless withheld.

### Conclusion

It is concluded that there are sufficient indications of factual issues requiring resolution to preclude allowance of a motion to dismiss in this case. Defendant's motion to dismiss is accordingly DENIED and the parties shall hereafter proceed in accordance with the applicable rules of the court.

IT IS SO ORDERED.

8. *United States v. Pewee Coal Co.*, 341 U.S. 114, 71 S.Ct. 670, 95 L.Ed. 809 (1951); *Aris Gloves, Inc. v. United States*, 420 F.2d 1386, 190 Ct.Cl. 367 (1970). *See also, Penn Central Transp. Co. v. New York City*, 438 U.S. 104, 98 S.Ct. 2646, 57 L.Ed.2d 631 (1978), *reh'g denied*, 439 U.S. 883, 99 S.Ct. 226, 58 L.Ed.2d 198 (1978).

9. Wright & Miller, *Federal Practice & Procedure: Civil* § 1357 n. 64 (p. 598) and cases cited therein; *Madison v. Purdy*, 410 F.2d 99 (5th Cir.1969).

10. 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

11. *Id.* 355 U.S. at 45–46, 78 S.Ct. at 101–102.

12. Note 4, *supra.*

13. The court found that Deltona's remaining land uses were plentiful, and its remaining economic position very great. Only a possible long-term diminution of value was perceived in that case.